# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 17-CR-526-RLW/DDN |
| | ) |
| KURT WALLACE, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S MOTION TO EXCLUDE BALLISTICS EVIDENCE

Comes now Defendant Kurt Wallace, by his attorneys, John D. Stobbs II, and Daniel J. Schattnik and for his Motion to Exclude Ballistic Evidence states:

## INTRODUCTION

Mr. Wallace requests that pursuant to Rules 402, 403, and 702 of the Federal Rules of Evidence (FRE) this Honorable Court excludes any evidence pertaining to alleged ballistics "matches" between firearms and discharged cartridge casings found at the scene of various shootings which will rely on expert testimony. Not only is the evidence irrelevant, but there is no sufficient scientific basis to conclude from the striations found on a cartridge case that a particular casing came from a particular firearm, therefore this sort of firearm identification evidence is both unreliable and invalid and cannot meet the requirements for admissibility set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

## FACTS

Mr. Wallace, in the Second Superseding Indictment, is being charged with allegedly committing several crimes involving various weapons. Pursuant to receiving information that a firearm suspected of being used in a crime by Mr. Wallace was being stored in the residence of a family member, the Government gained consent to search the residence and recovered a 9 millimeter handgun. The Government submitted the weapon

1

and the accompanied ammunition recovered from this firearm for analysis. The Government subsequently received information from the National Integrated Ballistic Information Network (NIBIN) that this 9 millimeter handgun and its accompanying ammunition correlated to two recorded incidents.

The correlated incident reports provide that there exists a possible association between the weapon and ammunition recovered at the residence with that of the casings recovered from the incidents, however, the report also provides that the associations have not been confirmed at this time, and that confirmation would require microscopic comparison of the evidence. The two incidents that the recovered weapon correlated to are not charged within Mr. Wallace's current Indictment. Further, the NIBIN information received by the Government did not provide any information that this weapon was correlated to any of the crimes allegedly committed by Mr. Wallace in the current Indictment.

## ARGUMENT

I. **THE BALLISTICS EVIDENCE RELATED TO THIS CASE SHOULD BE EXCLUDED BECAUSE IT IS IRRELEVANT TO THE CHARGES AND IF ADMITTED ITS PREJUDICE WOULD SUBSTANTIALLY OUTWEIGH ITS PROBATIVE VALUE**

As provided by Rule 402, "[a]ll relevant evidence is admissible . . ." Fed. R. Evid. 402. Relevant evidence is further defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Subsequently, even if the evidence is deemed relevant, the Court may exclude that evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . ." Fed. R. Evid. 403.

The ballistics evidence relating to the firearm found in Mr. Wallace's family member's residence is irrelevant and should be excluded. In his Second Superseding Indictment, Mr. Wallace is alleged to have committed numerous crimes involving weapons, however, as shown by the NIBIN information received by the Government after its requested analysis of the firearm and ammunition, no correlation has been shown

nor alleged between this firearm and any of the incidents that Mr. Wallace is charged with in his Indictment.

Even if this Court finds that the ballistics evidence may be relevant, such evidence should be excluded because such relevance would be substantially outweighed by the likelihood of unfair prejudice or confusion to the jury. With the ballistics evidence having no correlation to any of the current charges against Mr. Wallace, this information has minimal, if any at all, probative value, other than showing possession of a firearm, and has the potential to substantially prejudice Mr. Wallace. Mr. Wallace cautions that throwing irrelevant evidence into the mix will undoubtedly distract the jury from their ultimate goal. Absent any relevance to a claim in this litigation, any evidence of the ballistics information should be excluded as irrelevant or substantially prejudicial.

## II. THIS BALLISTICS EVIDENCE SHOULD FURTHER BE EXCLUDED BECAUSE THERE EXISTS AMPLE SCIENTIFIC BASIS THAT NEGATES THE ACCURACY AND RELIABILITY OF THIS KIND OF EVIDENCE

In 2009, the National Academy of Sciences (NAS), the pre-eminent scientific research organization in the United States, completed its comprehensive analysis of forensic science in the United States Courts. National Research Council, *Strengthening Forensic Science in the United States: A Path Forward* (2009), *available at* http://www.nap.edu/. The NAS endorsed the concerns expressed in the Ballistics Report the previous year:

> "Because not enough is known about the variabilities among individual tools and guns, we are not able to specify how many points of similarity are necessary for a given level of confidence in the result. Sufficient studies have not been done to understand the reliability of the methods."

*Id*. at 154. In particular, the NAS cautioned that "the decision of the toolmark examiner remains a subjective decision based on unarticulated standards and no statistical foundation for estimation of error rates. *Id.* at 153-54.

In addition, the NAS found that the field of ballistics was hampered by the absence of any established protocol for making ballistics comparisons. *Id*. Although the

3

Association of Firearm and Toolmark Examiners (AFTE), an association of law enforcement officers, provides "the best guidance available for the field of toolmaker identification," the NAS noted that the AFTE "does not even consider, let alone address, questions regarding variability, reliability, repeatability, or the number of correlations needed to achieve a given degree of confidence." *Id*. at 155.

This Honorable Court ought to exclude the ballistic forensic evidence for a number of reasons:

First, the toolmark comparisons by which the government intends to prove whether two casings came from the same gun, although routinely admitted by the Courts without analysis, is not based on "reliable principles and methods" and, therefore, is inadmissible under Fed. R. Evid. 702.

Second, ballistics comparisons have never been subjected to rigorous empirical testing. There is no standard for determining what quantity or quality of similar characteristics are necessary to constitute a match or what quantity or quality of differences are sufficient to constitute an exclusion. There is no formal training program, certification process, or proficiency testing for ballistics examiners. Yet, their conclusions are based on entirely subjective opinion and experience. The lack of true empirical testing in this field is nowhere more evident than in the fact that there is no known or potential error rate. There have been no standardized rate-of-error studies of which Mr. Wallace is aware. There is no established calibration of what is an acceptable or unacceptable rate of error. Further, no statistical norm has been developed, against which ballistics examinations can be evaluated to determine rates of error.

Third, the lack of empirical studies also means there are no accepted, objective standards for matching ballistics evidence in a reliable manner. Without standards, the potential expert testimony cannot answer, or even begin to address, the ultimate question: what constitutes a sufficient basis for a positive identification? If the examiner sees one similar mark on two separate shell casings, amid a host of dissimilar marks on each one, is that enough? And why? Certainly, there are not studies which address the question of the quantity, quality, or nature of marks needed to ascertain individualization between

4

shells. Further, there is no database, i.e., nothing akin to population studies in DNA analysis that an examiner can consult to determine what significance, if any, to assign to marks he or she has subjectively determined to be the same.

Lastly, the Government fails to provide any information pertaining to any comparison done in furtherance of the initial NIBIN information received. The Government has not provided a description, photographs, photomicrographs, or any lab report that compares the tool marks of the ballistics evidence. Further, the Government has failed to produce any documentation of ballistic comparisons other than the bare unconfirmed conclusions that the recovered weapon correlates with casings found at two uncharged incidents. The Government's allegations rest upon an initial system comparison which returns a report that provides that further confirmation is required in order to confirm a match.

**III.  IF EXPERT TESTIMONY IS ALLOWED IN THIS CASE, A DAUBERT HEARING IS REQUIRED TO DETERMINE WHETHER THE GOVERNMENT CAN MEET ITS BURDEN OF PROVING THAT ITS EVIDENCE RESTS ON SCIENTIFICALLY VALID FOUNDATION**

A Court's decision whether or not to admit proffered expert evidence is governed by FRE 702, in conjunction with the Supreme Court's opinion, *Daubert v. Merrell Dow Pharms., Inc.*. The District Court's role is that of gatekeeper, tasked with "screening expert testimony for relevance and reliability." *Lauzon v. Senco Prods., Inc.* 270 F.2d 681, 686 (8th Cir. 2001). Under Rule 702, expert opinion testimony is admissible if relevant, the witness is "qualified as an expert by knowledge, skill, experience, training, or education, [and] . . . (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

The Supreme Court in *Daubert* provided that in determining whether expert testimony is admissible, the trial could should undertake "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can properly be applied to the facts in issue. *Daubert*, 509 U.S. at 592-93.

The methodology of ballistics tool mark examination, as a field, has no known empirically tested error rate; tool mark examination, as a field, lacks accepted, objective standards for determining a match; no independent studies have been done to confirm the theory of uniqueness underlying tool mark examination. Modern firearm manufacture methods negate or diminish the theory or uniqueness. No statistical evidence exists to determine the probability of a coincidental match.

Mr. Wallace requests that in the event the Court decides to admit the ballistic forensic evidence that this Honorable Court holds an evidentiary *Daubert* hearing for the purposes of clarifying all issues, and to make findings on the record regarding the reliability of any anticipated Government expert testimony on the evidence. Holding a *Daubert* hearing is a recognized method for the Court to use in performing its gatekeeping function in making findings regarding the relevancy and reliability of expert testimony. *See U.S. v. Beasley*, 102 F.3d 1440, 1445 (8th Cir. 1996). As such, a *Daubert* hearing presenting testimony of the Government's expert and the Court's factual findings on the record regarding the reliability of this information will satisfy the Court's gatekeeping function.

## **CONCLUSION**

Wherefore, for the reasons state above, Mr. Wallace requests this Honorable Court to enter an Order excluding the ballistics forensic evidence of his case. If this Honorable Court allows the evidence and permits expert testimony then Mr. Wallace asks to be granted a *Daubert* hearing to determine whether the Government has met its burden of establishing that its proffered evidence rests on a foundation that is "scientifically valid."

KURT WALLACE

/s/John D. Stobbs II  
John D. Stobbs II, No. 43052  
307 Henry St. Suite 211  
Alton, Illinois 62002  
Telephone: (618)462-8484  
FAX: (618)462-8585  
Email: jds2@stobbslaw.com  

/s/Daniel J. Schattnek (By:JDSII  
Daniel J. Schattnik  
3 South 6th Street  
Wood River, Illinois 62095  
Telephone: (618) 258-1800  
FAX: (618) 258-1957  
Email: schattnik@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2022 a copy of the attached *Motion to Exclude Ballistic Evidence* was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Mr. Tom Rea
Assistant U.S. Attorney
111 S. 10th Street
St. Louis, Missouri 63102

STOBBS LAW OFFICES

/s/ John D. Stobbs II
Attorney for Defendant
307 Henry St. Suite 211
Alton, Illinois 62002