**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-CR-526-RLW/DDN |
| | ) | |
| KURT WALLACE, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

Comes now Defendant Kurt Wallace, by his attorneys, John D. Stobbs II, and Daniel J. Schattnik and for his Motion to Suppress Statements collected in violation of his Constitutional rights states:

## INTRODUCTION

Mr. Wallace requests that pursuant to the Fifth Amendment of the United States Constitution this Honorable Court suppresses any statements that the Government intends to present at trial that were collected subsequent to incidents that occurred on August 22, 2017, April 14, 2018, and July 15, 2019 because the *Miranda* waivers and the statements at issue were involuntary.

## STATEMENTS TO BE SUPPRESSED

### 1. INTERROGATION THAT OCCURRED AFTER THE INCIDENT ON AUGUST 22, 2017

On August 22, 2017 Mr. Wallace was arrested by the Normandy Police Department and booked for unlawful possession of a firearm by certain persons. The booking officer left Mr. Wallace in a holding room for over an hour until the officer that would conduct the interview arrived. Upon arrival, Officer Larson placed handcuffs not only on the wrists of Mr. Wallace but also upon his ankles. Mr. Wallace was then walked through the department into a dimly lit room, and Mr. Wallace was directed to the

restroom before being placed into an interview room which consisted of a small table and three chairs. Although Mr. Wallace's handcuffs were removed from his wrists upon being sat down, the cuffs remained on his ankles. Officer Larson asked Mr. Wallace questions from a form and proceeds to read him his rights. Before Mr. Wallace was read his rights he is asked if he needs an interpreter. It is visibly clear that Mr. Wallace does not understand the question. The officer responds to Mr. Wallace's confused look by providing, "this just means that you understand English so circle no." The officer then tells Mr. Wallace that if he wants to talk to him about this then he has to sign the bottom of this form. Mr. Wallace proceeds to sign the form and the officer begins discussing matters with him. At the end of the discussion the officer asks Mr. Wallace to write a statement where in response, Mr. Wallace asked the officer if he could write the statement for him. The officer provided that he was not able to do this and left Mr. Wallace in the interview room to write a statement.

## 2. INTERROGATION THAT OCCURRED AFTER THE INCIDENT ON APRIL 14, 2018

Subsequent to an alleged attempted escape from confinement within the St. Charles County Department of Corrections, Officer Hoefle conducted an interview with Mr. Wallace. Upon initiating the interview, the officer asked Mr. Wallace how he was doing, to which Mr. Wallace verbally responded that he was tired. The officer responded that he also was tired. This was due to the timing of this interview, which was conducted at almost 2:00 in the morning on the following day, April 15, 2018. The officer provided Mr. Wallace with his constitutional rights in a quick verbal manner. The officer asked Mr. Wallace if he understood these rights and would like to continue the conversation. Mr. Wallace responded yes to both of these questions, in an extremely lethargic tone which was continued throughout the questioning of Mr. Wallace about the incident.

## 3. INTERROGATION THAT OCCURRED AFTER THE INCIDENT ON JULY 15, 2019

Subsequent to an escape from confinement from the Lincoln County Jail, Detective Harney conducted an interview with Mr. Wallace. Mr. Wallace, while in

handcuffs and with cuffs around his ankles, was placed inside of an interview room containing two chairs and a small table which was placed in the corner. The detective asked Mr. Wallace how he was and Mr. Wallace responded that he was sore as a result of the car accident that happened after the escape. The detective proceeded to read Mr. Wallace his rights from a paper form and verbally asked Mr. Wallace if he understood his rights, to which he provided that he did. Immediately following, Mr. Wallace asked the detective, "are these federal charges or state charges?" The detective responded, "there may not be any charges yet, I don't know" and proceeded to ask Mr. Wallace about the incident.

## **ARGUMENT**

### I.   THE LEGAL STANDARD GOVERNING FIFTH AMENDMENT CONSTITUIONAL RIGHTS AND SUBSEQUENT MIRANDA WAIVERS

When determining if an individual voluntarily, knowingly, and intelligently waived their Fifth Amendment rights, a Court must look at the totality of the circumstances surrounding the interrogation. In *Fare v. Michael C*., 442 U.S. 707, 724-25 (1979), the Supreme Court had to decide whether a custodial statement provided by the Defendant was admissible after he requested to have his probation officer present but not an attorney. The Court noted that a request to speak with a probation officer does not constitute a *per* se request to remain silent, however, this request may be taken into account in evaluating whether in fact an individual waived his Fifth Amendment rights before confessing. *See id.* Importantly, the Court provided that "[t]he totality approach permits – indeed, it mandates – inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the [individual's] age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given to him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Id.* Only if the "totality of the circumstances surrounding the interrogation" reveals both uncoerced choice and the requisite level of comprehension may a Court properly conclude that the *Miranda* rights have been waived. *See id.* The Supreme Court held that the lower Court should have determined the issue of waiver on

the basis of all the circumstances surrounding the interrogation of the individual, and any special factors that indicate an inability to understand the nature of waiving their rights. *Id*. at 726.

An individual's level of education is a factor that must be considered when looking at the totality of the circumstances of whether a waiver of rights was made knowingly and voluntarily. In *United States v. Makes Room*, 49 F.3d 410 (8th Cir. 1995), the Defendant argued that both his confession and *Miranda* waiver were involuntary due to his lower-than-average intelligence. The Defendant contended that his limited intellectual abilities made him more susceptible to having his will overborne. *Id.* The Court ultimately rejected this argument, finding that, "[a]lthough age, education, and experience are factors in the voluntariness analysis, they are not dispositive." *Id.* While assuming that the Defendant had a somewhat diminished capacity to resist pressure to waive his rights and confess because of lower-than-average intelligence, the Court ruled that the confession was voluntary for lack of the requisite coercive activity by the officer. *Id.*

An individual's lack of sleep and fatigue are additional factors to be considered when looking at the totality of the circumstances of whether a waiver of rights and subsequent statements were made knowingly and voluntarily. In *United States v. Casal*, 915 F.2d 1225, 1227 (8th Cir. 1990), the Defendant, after being informed of his *Miranda* warnings, made a detailed confession to the police. The Defendant argued that his confession was not voluntary because he had not slept and was under the influence of drugs. *Id*. at 1228. The Court concluded that because there was testimony that existed showing that the Defendant did not mention to the interviewing officers that he lacked adequate sleep and also in light of testimony that the Defendant did not appear intoxicated and talked coherently, the confession was voluntary. *See id.* at 1229.

Lastly, evidence of suffering from pain during interrogation is another factor to consider when looking at the totality of the circumstances of whether a waiver of rights and subsequent statements were made knowingly and voluntarily. In *United States v. Annis*, 446 F.3d 852, 854 (8th Cir. 2006), the Defendant had a scuffle with an officer at

the police station resulting in injuries and requiring treatment with an ice pack and Tylenol. The Defendant argued that a statement he gave after this was involuntary because he was suffering from the pain of the incident and methamphetamine withdrawal at the time of his statement. *Id.* at 856. The Court found that because the Defendant provided no evidence that his pain and meth withdrawal caused his will to be overborne, and because he did not appear to be in any pain or suffering from withdrawal nor complain to the officer, his waiver, as well as his statement, were both made knowingly and voluntary. *Id.*

## II. BECAUSE THE STATEMENTS COLLECTED BY VARIOUS OFFICIALS WERE TAKEN INVOLUNTARILY IN VIOLATION OF MR. WALLACES FIFTH AMENDMENT RIGHTS, THEY SHOULD BE SUPPRESSED

### A. This Court should suppress any and all statements taken after the incident occurring on August 22, 2017 because Mr. Wallace did not knowingly and voluntarily waive his rights.

Mr. Wallace argues that based upon the totality of the circumstances and his lower than-average-intelligence, his *Miranda* waiver and subsequent statements were involuntary. The events leading up to the interrogation of Mr. Wallace were overtly intimidating. Not only was Mr. Wallace placed inside of a small room by himself for over almost an hour while waiting for the reporting officer, upon arrival, the officer placed handcuffs on Mr. Wallace's wrists and ankles and walked him through parts of the office and through a dimly lit room before placing him in the interrogation room. Upon entry, cuffs remained on Mr. Wallace's ankles at all times. Mr. Wallace argues that his situation here is similar to that of the Defendant in *U.S. v. Makes Room* in that he also has limited intellectual abilities making him more susceptible to having his will overborne because he was never able to finish school past the age of fifteen; however, it is converse from *Makes Room* in that the requisite coercive activity that the Court deemed did not exist in *Makes Room* is present here.

During the reading of the *Miranda* warnings waiver form, it is evident from the body camera footage that when asked the second question on the form, Mr. Wallace did not understand what he was being told. The officer realized that Mr. Wallace did not

5

understand and proceeded to tell Mr. Wallace that it just meant he understood English and directed him to circle "no." Subsequently, the officer informed Mr. Wallace that in order to talk about the situation, Mr. Wallace must sign the bottom of the form, failing to indicate that this meant waiving his Constitutional rights. Additionally, at the end of the interrogation, the officer has Mr. Wallace write down anything he wants the prosecutor to know, where Mr. Wallace proceeds to then ask the officer if he could write the statement for him. In the totality of the circumstances, Mr. Wallace's lower-than-average-intelligence coupled with the officer's overtly intimidating procedure leading up to the interrogation, leaving Mr. Wallace in ankle cuffs, and the officer's action of moving on when he realizes that Mr. Wallace does not fully understand the information being provided to him shows that his *Miranda* waiver and subsequent statements were done unknowingly and involuntarily.

**B.   This Court should suppress any and all statements taken after the incident occurring on April 14, 2018 because Mr. Wallace did not knowingly and voluntarily waive his rights.**

Mr. Wallace argues that based upon the totality of the circumstances and the fact that he was overly tired and fatigued, his *Miranda* waiver and subsequent statements were involuntary. Mr. Wallace believes that his situation is opposite of the Defendant in *United States v. Casal*, and therefore, this Court should rule that his *Miranda* waiver and subsequent statements were done involuntarily. Whereas in *Casal*, where the Defendant did not mention to the interviewing officer that he lacked adequate sleep, Mr. Wallace and his interviewing officer had a discussion about Mr. Wallace being overtly tired. The interviewing officer even provided that he himself was tired because the interview was taking place at nearly 2:00 in the morning. Further, opposite of the Defendant in *Casal*, testimony does not exist that shows Mr. Wallace talked coherently. In fact, it is the opposite. As evidenced from the audio recording of the interview, Mr. Wallace's tone is extremely lethargic and he is mumbling most of his words and sentences. Additionally, when the officer read Mr. Wallace his rights as required by *Miranda*, the officer did so rapidly. This was undoubtedly difficult for Mr. Wallace, who not only expressed he was

tired but also responded to questions in a sluggish and apathetic way, to understand and fully comprehend in order to voluntarily waive his *Miranda* warnings and provide a subsequent statement. Because of this, Mr. Wallace asks this Court to find both the waiver and any subsequent statements to be involuntary.

      **C.**      **This Court should suppress any and all statements taken after the incident occurring on July 15, 2019 because Mr. Wallace did not knowingly and voluntarily waive his rights.**

Mr. Wallace argues that based upon the totality of the circumstances and factoring in his level of suffering from pain as a result of a car accident occurring prior to this interrogation, his *Miranda* warning and subsequent statements were involuntary. Mr. Wallace distinguishes his situation from that of the Defendant in *United States v. Annis*. Although like the Defendant in *Annis*, Mr. Wallace similarly was suffering from pain, unlike that Defendant, Mr. Wallace not only expressed this pain, but also had his will overborne by the interviewer. The Court in *Annis* held that because the Defendant did not appear to be in any pain or complain of any suffering to the officer, coupled with the fact that he did not argue that his will was overborne by the officer, this made his waiver and statements both knowing and voluntary. This is opposite for Mr. Wallace's situation. The recording of the interview displays Mr. Wallace stating to the interviewer that he was in pain from the accident that occurred previously. The car that Mr. Wallace was a passenger in flipped over a median and landed upside down resulting in injury to both his arm and leg. Additionally, upon Mr. Wallace asking the detective whether "these were state or federal charges", the detective lied to Mr. Wallace and responded "there may not be any charges yet," misleading Mr. Wallace to the truth of the matter, suggesting that his talking made the difference between being charged or not. Because of the deceptive acts of the detective coupled with suffering from pain as a result of a car accident, Mr. Wallace asks this Court to rule that the *Miranda* waiver and his subsequent statements were involuntary.

**<u>CONCLUSION</u>**

WHEREFORE, for the reasons stated above, Mr. Wallace requests this Honorable Court to enter an Order granting his Motion to Suppress Statements which were collected in violation of his Fifth Amendment constitutional rights.

KURT WALLACE

/s/John D. Stobbs II                                            /s/Daniel J. Schattnek (By:JDSII
John D. Stobbs II, No. 43052                          Daniel J. Schattnik
307 Henry St. Suite 211                              3 South 6th Street
Alton, Illinois 62002                                Wood River, Illinois 62095
Telephone: (618)462-8484                      Telephone: (618) 258-1800
FAX: (618)462-8585                                  FAX: (618) 258-1957
Email: jds2@stobbslaw.com                      Email:  schattnik@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 19, 2022 a copy of the attached *Motion to Suppress Statements* was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Mr. Tom Rea
Assistant U.S. Attorney
111 S. 10th Street
St. Louis, Missouri 63102

STOBBS LAW OFFICES


/s/ John D. Stobbs II
Attorney for Defendant
307 Henry St. Suite 211
Alton, Illinois 62002